**UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO**

ALICE D. SALAZAR,

    Plaintiff,

v.                                                                                                               Civ. No. 16-1134 GJF

NANCY A. BERRYHILL, *Acting
Commissioner of the Social Security
Administration*,

    Defendant.

## **ORDER**

THIS MATTER is before the Court on Plaintiff's "Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing, With Supporting Memorandum" ("Motion"), filed on June 19, 2017. ECF No. 20. The Commissioner responded on August 21, 2017. ECF No. 22. Plaintiff replied on September 7, 2017. ECF No. 23. Having meticulously reviewed the entire record and the briefing, the Court finds that Plaintiff's Motion is well taken and that the Administrative Law Judge's ("ALJ's") ruling should be **REVERSED** and **REMANDED**. For the following reasons, the Court will **GRANT** the Motion.

**I.  BACKGROUND**

Plaintiff was born on November 4, 1956. Administrative R. ("AR") 86, 1073. She graduated high school in May 1974 and then worked in the banking industry as an order clerk, loan officer, and as a customer service representative. AR 76-77, 86, 267-68.

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on March 19, 2014, followed by an application for Supplemental Security Income ("SSI") on October 10, 2014. AR 210-19. Plaintiff alleged disability beginning on March 14, 2014, based on fibromyalgia, obstructive sleep apnea, hypersomnolence, carpal tunnel syndrome, headaches,

1

short term memory and concentration impairments, difficulty comprehending and processing information, depression, irritability, anxiety, chronic fatigue, lightheadedness, sleep disturbances, and frequent urinary tract infections. AR 103. The SSA denied Plaintiff's application initially and upon reconsideration. AR 99, 122. At her request, Plaintiff received a *de novo* hearing before ALJ Ann Farris, at which Plaintiff, her disability representative John Bishop, and vocational expert ("VE") Karen Provine appeared. AR 45-85, 359-60. On May 19, 2016, the ALJ issued her decision, finding that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act"). AR 19-37. Plaintiff appealed to the SSA Appeals Council, but it declined review. AR 1-3. As a consequence, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 422.210(a) (2017).

Plaintiff timely filed her appeal with this Court on November 23, 2016. ECF No. 1.

## II.   PLAINTIFF'S CLAIMS

Plaintiff advances seven grounds for relief. First, she argues that the ALJ erred by adopting the VE's testimony without clarification. Pl.'s Mot. 7-8, ECF No. 20. Second, Plaintiff alleges that the ALJ improperly evaluated the opinion of Dr. Sharon Nunez, M.D., one of her treating physicians. *Id.* at 9-14. Third, she contends that the ALJ neglected to perform a specific analysis of Plaintiff's fibromyalgia and integrate the results into her RFC. *Id.* at 14-19. Fourth, Plaintiff claims that the ALJ failed to include in her RFC a moderate limitation identified by Dr. John Owen, Ph.D. *Id.* at 20-21. Her fifth claim challenges the omission of a similar limitation identified by Dr. Charulata Nadiq, Psy.D. *Id.* at 21. Sixth, Plaintiff complains that her RFC did not properly account for her walking and standing limitations. *Id.* at 23-25. Lastly, Plaintiff

asserts that the credibility finding made by the ALJ was contrary to the evidence and established law. *Id.* at 26-27.[1]

## III. APPLICABLE LAW

### A. Standard of Review

When the Appeals Council denies a claimant's request for review, the ALJ's decision becomes the final decision of the agency.[2] The Court's review of that final agency decision is both factual and legal. *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence.").

The factual findings at the administrative level are conclusive "if supported by substantial evidence." 42 U.S.C. § 405(g) (2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). An ALJ's decision "is not based on

---

[1] Plaintiff initially advanced an additional but baseless argument that the ALJ did not evaluate the opinion of nonexamining consultative psychologist Kevin Santulli, Ph.D. Pl.'s Mot. 21-22, ECF No. 20. When called to account for this insupportable position by the Commissioner, however, Plaintiff wisely abandoned the argument and apologized to both the Court and the Commissioner. Pl.'s Reply 6, ECF No. 23. Apparently not content to leave well enough alone, Plaintiff then pivoted to an alternative theory, declaring that "[i]n any event, the ALJ's stated reasons for rejecting Dr. Santulli's findings are wrong for the same reasons that she rejected Dr. Nunez's findings." *Id.* The Court will not consider this alternative argument, as it is raised for the first time in Plaintiff's Reply. *See, e.g., United States v. Redcorn*, 528 F.3d 727, 738 n.4 (10th Cir. 2008) (citing *Hanh Ho Tran v. Trustees of State Colls. in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004) ("Issues not raised in opening brief are deemed abandoned or waived.") (citations omitted)); *Guidry v. Astrue*, Civ. No. 08–1846, 2009 WL 4884282, at *5, n.8 (D. Colo. Dec. 10, 2009) (citing *M. D. Mark, Inc. v. Kerr–McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009)) (noting that "the general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief"). *Accord Wheeler v. C.I.R.*, 521 F.3d 1289, 1291 (10th Cir. 2008) (issues raised for the first time in a reply brief are generally deemed waived).

[2] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g) (2012), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981 (2017); *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. Substantial evidence does not, however, require a preponderance of the evidence. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). A court should meticulously review the entire record but should neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

As for the review of the ALJ's legal decisions, the Court examines "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax*, 489 F.3d at 1084. The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show . . . that [he] has done so." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

Ultimately, if substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214, *Doyal*, 331 F.3d at 760.

### B. Sequential Evaluation Process

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2016). At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), & Pt. 404, Subpt. P, App. 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's RFC. *See Winfrey*, 92 F.3d at

1023; 20 C.F.R. §§ 404.1520(e), 416.920(e). In phase two, the ALJ determines the physical and mental demands of the claimant's past relevant work, and in the third phase, compares the claimant's RFC with the functional requirements of her past relevant work to determine if the claimant is still capable of performing her past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(f), 416.920(f). If a claimant is not prevented from performing her past work, then she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987).

If the claimant cannot return to her past work, then the Commissioner bears the burden at the fifth step of showing that the claimant is nonetheless capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## IV. THE ALJ'S DECISION

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of March 14, 2014. AR 21. At step two, the ALJ found Plaintiff to suffer the following severe impairments: (1) trigger finger, (2) diabetes mellitus, (3) hypothyroidism, (4) fibromyalgia, (5) mild osteoarthritis in the hands, (6) carpal tunnel syndrome, (7) right knee pain, (8) obstructive sleep apnea, (9) tarsal tunnel syndrome, (10) mild neurocognitive disorder due to obstructive sleep apnea, and (11) adjustment disorder with depression and anxiety. AR 21.

At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 21-23. The ALJ first analyzed Plaintiff's physical impairments, finding that Plaintiff's carpal tunnel syndrome and osteoarthritis of the hands did not, alone or in combination, meet or medically equal the criteria set forth in Listing 1.02B (major dysfunction of a joint) or Listing 11.14 (peripheral neuropathies). AR 22. She reasoned that Plaintiff, upon examination, "was able to pick up small objects from a flat surface with no difficulty" and demonstrated satisfactory "motor function in her wrists." AR 22. Further, the "[r]ange of motion in her wrists and fingers was normal." AR 22.

The ALJ then turned to Plaintiff's mental impairments, which she considered under Listing 12.04 (affective disorders) and 12.06 (anxiety-related disorders). AR 53. The ALJ determined the evidence did not satisfy the paragraph B criteria of these Listings[3] "[b]ecause the claimant's mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration." AR 23. She then explained her reasoning regarding paragraph B's four subparts.

First, the ALJ evaluated Plaintiff's activities of daily living and found her to have no restriction. The ALJ looked both to the results of Plaintiff's consultative examinations and her own self-reporting to determine that she could manage her hygiene, pay bills, count change,

---

[3] Paragraph B of Listings 12.04 and 12.06 (which was identical at the time in both) describes impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations must be the result of the mental disorder described in the diagnostic description. To meet either of these two Listings, a claimant must exhibit at least two of the following:
     1. Marked restriction of activities of daily living; or
     2. Marked difficulties in maintaining social functioning; or
     3. Marked difficulties in maintaining concentration, persistence, or pace; or
     4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A1, §§ 12.04(B), 12.06(B) (2016). On March 27, 2017, the SSA significantly altered the language of these listings in ways that are not relevant to this decision.

handle a savings account, use a checkbook, and go shopping. AR 22. Plaintiff's mother confirmed as much in the Third-Party Function Report she completed for Plaintiff on May 1, 2014. AR 22 (citing AR 287). To the extent Plaintiff had any restrictions in her daily living, the ALJ believed they derived from her physical complaints. AR 22.

Second, the ALJ found Plaintiff to have moderate difficulties in social functioning. In support of this finding, she recounted that both Plaintiff and her mother reported that Plaintiff had no difficulty getting along with friends, family, neighbors, or others. AR 22. Nevertheless, Plaintiff also told Dr. Owen that she "stays home most of the day and does not socialize." AR 22.

Third, as to Plaintiff's concentration, persistence, and pace, the ALJ found Plaintiff had moderate difficulties. To buttress the finding, the ALJ relied on Plaintiff's statements that she is able to pay attention from one to five minutes and follow written instructions well, but she is not able to finish what she starts or to follow spoken instructions. AR 22-23. The ALJ also recounted recommendations from both Dr. Owen and Dr. Nadiq, who ascribed limitations related to concentration and persistence in the mild to moderate range. AR 23.

Finally, regarding episodes of decompensation, the ALJ found that Plaintiff "has experienced no episodes of decompensation[ ] which have been of extended duration." AR 23. This corresponded with his finding that the paragraph C criteria of the relevant listings were not met. AR 23.

Because none of Plaintiff's impairments satisfied an applicable Listing, the ALJ moved on to the first phase of step four and assessed Plaintiff's RFC. AR 23-35. "After careful consideration of the entire record," the ALJ determined that Plaintiff:

> [H]ad the residual functional capacity . . . to perform sedentary work as defined in [20 C.F.R. §§] 404.1567(a) and 416.967(a) except that she can occasionally climb

ramps or stairs but never climb ladders or scaffolds; she can occasionally balance and stoop but never kneel, crouch, or crawl; she can frequently reach and finger; she must avoid exposure to hazardous conditions, including unprotected heights and dangerous moving machinery; she is limited to simple and some detailed but not complex tasks; and she should have occasional interactions with the general public.

AR 23-24.

To develop Plaintiff's RFC, the ALJ relied on two principal grounds. First, the ALJ rendered an adverse credibility finding against Plaintiff, opining that Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of [her] symptoms are not entirely credible or disabling for the reasons explained in this decision." AR 25. Following a comprehensive analysis of the voluminous medical opinions in the record – which formed the second basis for Plaintiff's RFC – the ALJ supported her adverse credibility finding by devoting nearly two pages to contrasting the objective medical evidence with Plaintiff's statements concerning her symptoms. *See* AR 33-34. Here, that medical evidence was extensive, as demonstrated by that fact that the ALJ faced the atypical task of assessing no less than *fourteen* medical opinions. *See* AR 25-33.

In the second phase of step four, the ALJ identified past relevant work as an order clerk, cashier/checker, loan officer, and customer service representative. AR 35. Then, at the third and final phase of step four, the ALJ found that Plaintiff was "unable to perform any past relevant work." AR 35.

At step five, the ALJ relied on the testimony of the VE to determine what jobs, if any, Plaintiff could still perform. The ALJ also relied on her own finding that Plaintiff had "acquired work skills from past relevant work" including skills in "record processing, which involves gathering, organizing, and recording information accurately; analyzing and classifying documents according to established procedures; and recognizing errors in printed copy." AR 35.

8

The VE took both Plaintiff's RFC and her transferable skills into consideration and opined that Plaintiff could perform the occupations of credit card clerk, Dictionary of Occupational Titles ("DOT")[4] # 209.857-014, and data examination clerk, DOT # 209.837-022.[5] AR 36. The ALJ accepted the VE's testimony and concluded that Plaintiff "has acquired work skills from the past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." AR 36. Moreover, she emphasized the VE's testimony that Plaintiff's "previous work is so similar to the jobs recited above that [Plaintiff] would need to make very little, if any, vocational adjustment in terms of tools, work processes, work setting, or the industry." AR 36. "Accordingly," the ALJ opined, "although [Plaintiff's] additional limitations do not allow [Plaintiff] to perform the full range of sedentary work, considering [Plaintiff's] age, education, and transferable work skills, a finding of 'not disabled' is appropriate under the framework of Medical-Vocational Rule 201.07, section 201.00(f) of the Medical-Vocational Guidelines." AR 37.

In conclusion, the ALJ found that Plaintiff had not been under a disability, as defined by the Act, during the relevant time period and denied her claim. AR 37.

## V. ANALYSIS

Plaintiff's Motion advances seven allegations of error, but the Court need only address the fourth and fifth. There, Plaintiff asserts identical meritorious challenges that the ALJ committed legal error by failing to include a moderate nonexertional limitation assigned by both Dr. Owen and Dr. Nadiq. Because appropriate analysis of these opinions may affect Plaintiff's

---

[4] The DOT includes information about jobs (classified by their exertional and skill requirements) that exist in the national economy. 20 C.F.R. § 220.134 (2017). Regulations require the Commissioner to take administrative notice of job information provided by the DOT. 20 C.F.R. § 404.1566 (2017).

[5] The VE also identified the position of data entry clerk, DOT # 203-582-054 as a third occupation that Plaintiff could perform, but the ALJ omitted this position in her decision. AR 36, 79. Neither party has raised its absence as error.

9

disability determination, the Court will reverse and remand the ALJ's decision for both proper analysis and support.

### A. Consultative Examiners' Opinions and the ALJ's Evaluation

Dr. Charulata Nadiq, Ph.D., conducted a psychological examination of Plaintiff at the request of the SSA on August 28, 2014. AR 607. Dr. Nadiq administered various diagnostic exams to gauge Plaintiff's nonexertional limitations, and ultimately opined that Plaintiff was "coping with a complex array of physical ailments and treatments which all affect cognitive function and emotional stability." AR 610. She explained that "[b]oth physical and cognitive barriers to workplace success exist, and interact with one another," and that Plaintiff's mental health issues were further "complicated by cognitive symptoms which are likely to only resolve with effective treatment of her other medical conditions." AR 610. When translated to functional limitations, Dr. Nadiq concluded that Plaintiff had moderate limitations in her ability to: (1) concentrate and persist at tasks of basic work; and (2) adapt to changes in the work place. AR 610.

Dr. John Owen, Ph.D., performed a consultative psychological examination of Plaintiff on March 10, 2015. AR 1073. Following his examination, Dr. Owen noted that Plaintiff "is no longer punctual like she used to be" and that Plaintiff "acknowledged that she can no longer handle stress like she was once able to do." AR 1074. He concluded that Plaintiff's "anxiety interferes with her recall and certain cognitive skills." AR 1074. Dr. Owen then reduced his findings to opinions on Plaintiff's nonexertional limitations, and opined that Plaintiff had moderate limitations in: (1) her ability to interact with the public, and (2) her ability to adapt to changes in the workplace. AR 1075.

The ALJ assigned "significant weight" to Dr. Nadiq's opinion, as she found it to be "consistent with her mental status examination, [Plaintiff's] treatment record, [Plaintiff's] mental health treatment and her response to treatment, and her daily activities." AR 31. Notably, while discussing Dr. Nadiq's opinion, the ALJ acknowledged that Dr. Nadiq had found Plaintiff to suffer moderate limitations in both her ability to concentrate and persist at tasks of basic work and her ability to adapt to changes in the workplace. AR 31 (citing AR 610).

The ALJ ascribed the same "significant weight" to Dr. Owen's opinion and provided nearly identical reasons for doing so. AR 33. Furthermore, the ALJ again recounted the moderate limitations that Dr. Owen had identified in both Plaintiff's ability to interact with the public and to adapt to changes in the workplace. AR 32.

In a later section of her decision, the ALJ emphasized again that she gave "significant weight to the opinions of the consultative examiners, Drs. Nadiq and Owen." AR 35. By the ALJ's account, their opinions reinforced that Plaintiff could "perform simple and some detailed but not complex tasks." AR 35.

B.  **The Parties' Positions**

Plaintiff's position is a simple one: the ALJ purported to adopt the opinions of both Dr. Nadiq and Dr. Owen, but "made no concession" in her RFC for "the moderate limitation in adapting to workplace changes." Pl.'s Mot. 20. As a consequence, she argues that the ALJ violated the "pick and choose" rule first articulated in *Haga*. *See id.* at 20-21; *Haga v. Astrue*, 482 F.3d 1206, 1208 (10th Cir. 2007).

The Commissioner ignores the potential of a pick and choose violation. Instead, she advances the novel proposition that merely by "expressly not[ing] this aspect of both doctor's opinions" – rather than including it in Plaintiff's RFC – the ALJ complied with relevant

regulations and precedent. Def.'s Resp. 12. In fact, bereft of any relevant support, the Commissioner goes so far as to claim that "the ALJ reasonably concluded" that the moderate limitation in adapting to workplace changes "was consistent with an RFC that provided Plaintiff could perform simple and some detailed but not complex tasks." *Id.* The Commissioner then cites to the inapposite SSR 96-9p, which states that unskilled work generally requires a mental capacity *to deal with changes in a routine work setting*. *See id.*; SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996). She closes with a general argument that neglecting to incorporate the limitation into Plaintiff's RFC was nevertheless reasonable. *See* Def.'s Resp. 12-13.

C. **Relevant Law**

In 2007, the Tenth Circuit published two cases that control here. First, in *Haga*, the court held that an ALJ erred in failing to explain why he adopted some of a consultative examiner's restrictions but rejected others. *See* 482 F.3d at 1208. The court remanded "so that the ALJ [could] explain the evidentiary support for his RFC determination." *Id.* The Tenth Circuit later expressly applied *Haga* and its reasoning to the opinions of nonexamining physicians in *Frantz v. Astrue*, 509 F.3d 1299, 1302–03 (10th Cir. 2007). *Haga*'s holding that an "ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability" has become known as the "pick and choose" rule. 482 F.3d at 1208.

More recent decisions of the Tenth Circuit have clarified the application of *Haga*, but none have overruled it. First, in 2015, the Tenth Circuit held it is not always necessary for the ALJ to make specific limitations in the RFC for concentration, persistence and pace. *Vigil v. Colvin*, 805 F.3d 1199, 1203-04 (10th Cir. 2015). In *Vigil*, the Tenth Circuit concluded that the ALJ adequately accounted for moderate limitations in concentration, persistence and pace by

12

limiting the plaintiff to unskilled work. *Id.* The plaintiff in *Vigil* had impaired delayed recall, inability to spell in reverse, and could not recall the President's name, leading the ALJ to conclude that the plaintiff "could not be expected to perform complex tasks." *Id.* at 1203. Thus, the ALJ concluded that the plaintiff was "unable to perform complex tasks, such that he is limited to jobs with a specific vocational preparation [ ] of one or two." *Id.* at 1201. *Vigil* noted that unskilled work generally requires only the following: (1) understanding, remembering, and carrying out simple instructions; (2) making judgments that are commensurate with the functions of unskilled work – *i.e.*, simple work-related decisions; (3) responding appropriately to supervision, co-workers and usual work situations; and (4) dealing with changes in a routine work setting. *Id.* at 1204 (quoting SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996)).

In 2016, the Tenth Circuit ratified *Vigil*'s holding that "an administrative law judge can account for moderate limitations by limiting the claimant to particular kinds of work activity." *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016) (citing *Vigil*, 805 F.3d at 1204). In *Smith*, the Tenth Circuit reviewed an ALJ's RFC determination based on a non-examining physician's assessment of nine moderate non-exertional limitations. *Id.* at 1268. These nine limitations were: (1) maintaining concentration, persistence, and pace; (2) remaining attentive and keep concentration for extended periods; (3) working with others without getting distracted; (4) completing a normal workday and workweek without interruption for psychologically based systems; (5) performing at a consistent pace without excessive rest periods; (6) accepting instructions and respond appropriately to criticism by supervisors; (7) getting along with coworkers or peers without distracting them or engaging in behavioral extremes; (8) responding appropriately to changes in the workplace; and (9) setting realistic goals or engaging in independent planning. *Id.* In her RFC narrative, the non-examining physician omitted the

13

majority of the nine limitations and recommended instead that the claimant "could (1) engage in work that was limited in complexity and (2) manage social interactions that were not frequent or prolonged." *Id.* The ALJ adopted the recommendation and found that the claimant "(1) could not engage in face-to-face contact with the public and (2) could engage in only simple, repetitive, and routine tasks." *Id.* at 1269. "Through these findings," the Tenth Circuit held, "the [ALJ] incorporated the functional limitations of [the claimant's] moderate nonexertional limitations." *Id. Smith* reasoned that the "notations of moderate limitations served only to aid [the physician's] assessment of residual functional capacity." *Id.* at 1269, n.2. Correspondingly, the Tenth Circuit explained that the court's function is not to compare the ALJ's findings to a physician's "notations of moderate limitations," but rather to compare the ALJ's findings to the physician's opinion. *Id*.

### D. The ALJ Impermissibly Picked and Chose from Dr. Nadiq's and Dr. Owen's Opinions

The crux of this case is Plaintiff's skill level. The skill level required to perform a particular occupation is known as "SVP," for "specific vocational preparation." *Vigil,* 805 F.3d at 1201. "SVP refers to the time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Id.* at 1201 n.2 (internal quotation marks omitted). The DOT lists an SVP for each described occupation. According to the skill level definitions in 20 CFR §§ 404.1568 and 416.968 (2017), unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9. SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000).

In this case, the ALJ found that Plaintiff could perform work corresponding to an SVP of 3, as evidenced by the following exchange with the VE:

14

> A: Your [H]onor, if I could clarify[,] should I look for a reasoning level of three or four?
>
> Q: Well what is the highest that it goes to?
>
> A: Four is higher.
>
> Q: Well four is higher but -- I mean they start at one and they go to?
>
> A: Six.
>
> Q: Six okay. So detailed basically would indicate semiskilled but not skilled basically.
>
> A: Okay. So --
>
> Q: Okay, so reasoning I would say probably three and not four though.

AR 32-33. In addition to this excerpt, the ALJ noted in her decision that Plaintiff could perform the jobs of credit card clerk and data examination clerk, both of which correspond to an SVP of 3. AR 36.

On these facts, *Haga* dictates reversal, as neither *Vigil* nor *Smith* allows for the incorporation of Plaintiff's moderate limitation in the ability to adapt to changes in the workplace into her RFC restriction to semi-skilled work (SVP 3). *See* SSR 00-4p, 2000 WL 1898704, at *3 (semi-skilled work corresponds to an SVP of 3 or 4). In both *Vigil* and *Smith*, the Tenth Circuit allowed for the incorporation of certain nonexertional limitations within the restriction to *unskilled work*. *Vigil* made clear that this incorporation only encompassed a limitation to simple work corresponding to an SVP of one or two. *See* 805 F.3d at 1201. *Smith* allowed the incorporation only where the plaintiff was limited to simple, routine, repetitive tasks, which under the rule in *Hackett*, corresponds to an SVP of one or two. *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (holding that the limitation to simple and routine tasks corresponds to an SVP no higher than two).

Plaintiff's RFC skill level corresponds to an SVP of 3, which is a more advanced skill level than that of either the plaintiff in *Vigil* or in *Smith*. As a consequence, Plaintiff's RFC falls under the general rule of *Haga*, and the moderate limitations expressed in the opinions of Dr. Nadiq and Dr. Owen may not be assumed within Plaintiff's RFC restriction to semi-skilled work. Rather, by failing to express these limitations in Plaintiff's RFC, the ALJ violated the pick and choose rule and committed legal error. The Court therefore concludes that Plaintiff's fourth and fifth claims are well taken, and that the ALJ's decision must be reversed.

## VI. CONCLUSION

The Court concludes that the ALJ committed reversible legal error by failing to properly incorporate Plaintiff's moderate limitation in ability to adapt to changes in the workplace into her RFC finding.

**IT IS THEREFORE ORDERED** that Plaintiff's "Motion to Reverse or Remand the Administrative Decision" [ECF No. 20] is **GRANTED.**

**IT IS FURTHER ORDERED** that the Commissioner's final decision is **REVERSED** and that the instant cause is **REMANDED** for further review consistent with this opinion**.**

**IT IS SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*